FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

'97 NOV -6 PM 12: 37

U.S. DISTRICT COURT
N.D. OF ALABAMA

WILLIS MAE LONG,            )

    PLAINTIFF,          )

VS.                        )            CV-96-H-2377-S

THE CITY OF FAIRFIELD,     )

    DEFENDANT.          )

ENTERED

NOV - 6 1997

## MEMORANDUM OF DECISION

The court has before it the August 8, 1997 motion by
defendant the City of Fairfield (the "City") for the entry of
summary judgment in its favor on plaintiff's claims under the
Equal Pay Act.  The motion was originally deemed submitted for
decision by this court on September 16, 1997.  In the pre-trial
order, the court noted that it would "postpone a ruling on the
motion now under submission to give the parties an opportunity to
proceed to mediation."  See September 16, 1997 Pre-trial Order.
Then the court's October 3, 1997 order indicated that the motion
for summary judgment would be deemed submitted, without oral
argument, to the court for decision as of October 17, 1997,
unless the parties notified the court prior to that time of their
intention to mediate the matter.  The court received no such
notice from the parties.

Plaintiff originated this action on September 10, 1996 by
filing a complaint with this court alleging that the City, the
Jefferson County Personnel Board and Larry Langford violated
Title VII and 42 U.S.C. § 1981 by discriminating based on race

35

and/or sex, and violated the Equal Pay Act.  On November 4, 1996,
the court granted in part defendants' motion to dismiss and
dismissed all Title VII claims, as well as any claims asserted by
plaintiff against the Jefferson County Personnel Board and Larry
Langford.  During the pre-trial conference, plaintiff moved for
dismissal of all her § 1981 claims and the pre-trial order
reflects the court's dismissal of these claims.  At this stage,
plaintiff's only remaining claim is an Equal Pay Act claim.

## I.   FACTUAL BACKGROUND

Plaintiff has served as the superintendent over the City's
parks and recreation area since 1985.  See Long depo. at 8.
Alton Woodard, plaintiff's immediate supervisor, currently serves
as the director of the parks and recreation department.  See Long
depo. at 10. Woodard earns a salary of approximately ten thousand
dollars more than the salary paid to the plaintiff.[1]

From 1985 until 1993, plaintiff reported to the parks and
recreation board of the City (the "Board").  See Langford depo.
at 9-10.  On March 1, 1993, the City dissolved the Board and the

---

[1]   The parties appear to disagree about the differential in
salary between plaintiff and Woodard.  Plaintiff's complaint
asserted a salary differential of approximately $8,500.00.  See
Complaint at Count II, ¶ 4.  Mayor Langford's affidavit indicates
a pay differential of approximately $4,000.00.  See Exhibit D to
Motion for Summary Judgment.  Then in plaintiff's brief, she
asserts that the pay differential is approximately $10,000.00
based on the four grade difference between the current
classifications of plaintiff and Woodard.  See Plaintiff's Brief
at 1 (citing Plaintiff's Exhibits 41, 65, 66, and 67).  For
purposes of this motion, the court will construe all facts in
favor of plaintiff, and therefore assume a $10,000.00 pay
differential between plaintiff and Woodard.

parks and recreation area became a department of the City, under
the direction of the mayor's office.  See Langford depo. at 9.
According to Mayor Langford, the Board was dissolved due to an
inability of the Board and plaintiff, as superintendent, to
account for approximately $100,000 of taxpayers' money.  See
Langford depo. at 13, 21-22.

When parks and recreation became a city department, the City
created the position of director for the parks and recreation
department.  See Long depo. at 67.  The City filed a request with
the Jefferson County Personnel Board and received a list of
qualified applicants, including Mr. Woodard.  See Langford depo.
at 32, 36-37.  The City concedes that plaintiff was also a
qualified applicant for the superintendent position.  Mayor
Langford talked with plaintiff about the position, prior to
Woodard being hired.  See Langford depo. at 44.  After conducting
interviews, Mayor Langford determined that Woodard was the best
qualified of the applicants submitted to the City due to his
extensive managerial experience and an extensive background in
aquatics.  Id. at 44.[2]

---

[2]  Mayor Langford testified that he selected Woodard over
plaintiff for the position of superintendent of parks and
recreation because Woodard had some background in aquatics that
would equip him to institute swimming programs and run a million-
dollar swimming pool facility while plaintiff was unable to swim
and had no aquatic training.  See Langford depo. at 47-48.
Langford assessed plaintiff's past performance as inadequate
because she had not visited the parks regularly, failed to take
care of her duties in relation to the parks and was rude and
confrontational with her subordinates.  See Langford depo. at 15-
19, 47-48.  Plaintiff asserts that she wanted to receive aquatic
training by taking a pool operator certification class in 1994,
but was denied the opportunity.  See Plaintiff's Ex. 34.

3

Plaintiff claims that she is entitled to pay equal to
Woodard because she is performing Woodard's job.  Defendant
relies on Mayor Langford's description of the two jobs contained
in his affidavit:[3]

> . . . Mr. Woodard, as director of the Parks &
> Recreation Department, has overall responsibility for
> planning, organizing and developing a comprehensive
> year-round recreation program for the citizens of the
> City of Fairfield, Alabama.  Mr. Woodard has overall
> responsibility for preparing an annual budget;
> preparing periodic and special reports; making public
> speeches; conferring with architects, engineers and
> contractors; promoting all park facilities including
> but not limited to the City's swimming facility;
> conferring with city officials; making recommendations
> with regard to hiring and termination of employees;
> working with employees of the Parks & Recreation
> Department; planning special events and park programs,
> and has overall responsibility for the direction of the
> Park Department.
>
> While Ms. Long, as superintendent of the Parks &
> Recreation Department, certainly provides input into

---

Although plaintiff appears to dispute whether Woodard had the
required managerial experience, his deposition testimony
indicates such experience.  See Woodard depo. at 39-41.  While
both parties spend time discussing this hiring process, the
actual selection process is no longer before the court based on
the dismissal of plaintiff's Title VII and § 1981 claims.

[3]  In her brief, plaintiff asserts that her copy of
defendant's motion for summary judgment did not include the
Langford affidavit, and therefore she is "at a loss as to what is
in its contents."  See Plaintiff's Brief at p.2.  Defendant's
motion was filed on August 8, 1997 and indicates that the
Langford affidavit is attached as an exhibit.  After receiving
the motion, which notified plaintiff that the Langford affidavit
was submitted to the court in support of the motion for summary
judgment, plaintiff had over a month to request a copy of the
affidavit from defendant's counsel or acquire a copy of the
affidavit from the court record.  While it was initially
defendant's responsibility to serve plaintiff with the affidavit,
when submitted to the court, defendant notified plaintiff of its
reliance on and submission of the affidavit and plaintiff now
shoulders some responsibility for requesting or obtaining a copy
of the affidavit when responding to the motion.

4

> the operation of the Parks & Recreation Department, her
> job is not substantially similar to Mr. Woodard's job.
> Mr. Woodard certainly has much more administrative and
> civic responsibilities and expectations than does Ms.
> Long.

See Exhibit D to Motion for Summary Judgment; see also Exhibit 2
to Woodard Depo.

Plaintiff's job description and a position clarification
Questionnaire indicate that plaintiff's major responsibilities
include: assessment of community recreational needs and designing
appropriate programs; conferring with group leaders about
activity schedules; personnel decisions and evaluations on
subordinate employees and volunteer workers; preparation of
annual budget; coordinate grant applications and research; Attend
meetings and conferences both locally and those relating to parks
and recreation; promotion of programs and facilities by public
relations efforts; and presentations to school, city and civic
groups to promote the parks and Recreation program.  See Exhibit
5 to Woodard depo.; Plaintiff's Exhibit 24.


## II.   LEGAL ANALYSIS

### A.   Standard for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if
the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."
See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The

5

party asking for summary judgment always bears the initial
responsibility of informing the court of the basis for its
motion, and identifying those portions of the pleadings or
filings, which it believes demonstrate the absence of a genuine
issue of material fact.  Celotex, 477 U.S. at 323.  Once the
moving party has met his burden, Rule 56(e) requires the
nonmoving party to go beyond the pleadings and by his own
affidavits, or by the depositions, answers to interrogatories,
and admissions of file, designate specific facts showing that
there is a genuine issue for trial.  Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material
and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).  All reasonable doubts about the facts and
all justifiable inferences are resolved in favor of the
nonmovant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115
(11th Cir. 1993).  A dispute is genuine "if the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party."  Anderson, 477 U.S. at 248.  If the evidence is merely
colorable, or is not significantly probative, summary judgment
may be granted.  Id. at 249.

The method used by the party moving for summary judgment to
discharge its initial burden depends on whether that party bears
the burden of proof on the issue at trial.  See Fitzpatrick, 2
F.3d at 1115-17 (citing United States v. Four Parcels of Real
Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the
moving party bears the burden of proof at trial, then it can only

6

meet its initial burden on summary judgment by coming forward
with positive evidence demonstrating the absence of a genuine
issue of material fact; i.e. facts that would entitle it to a
directed verdict if not controverted at trial.  Fitzpatrick, 2
F.3d at 1115.  Once the moving party makes such a showing, the
burden shifts to the nonmoving party to produce significant,
probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at
trial, it can satisfy its initial burden on summary judgment in
either of two ways.  First, the moving party may produce
affirmative evidence negating a material fact, thus demonstrating
that the nonmoving party will be unable to prove its case at
trial.  Once the moving party satisfies its burden using this
method, the nonmoving party must respond with positive evidence
sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not
bear the burden of proof at trial can satisfy its initial burden
on summary judgment is to affirmatively show the absence of any
evidence in the record in support of a judgment for the nonmoving
party on the issue in question.  This method requires more than a
simple statement that the nonmoving party cannot meet its burden
at trial but does not require evidence negating the nonmovant's
claim; it simply requires the movant to point out to the district
court that there is an absence of evidence to support the
nonmoving party's case.  Fitzpatrick, 2 F.3d at 1115-16.  If the
movant meets its initial burden by using this second method, the

7

nonmoving party may either point to evidence in the court record,
overlooked or ignored by the movant, sufficient to withstand a
directed verdict, or the nonmoving party may come forward with
additional evidence sufficient to withstand a directed verdict
motion at trial based on the alleged evidentiary deficiency.
However, when responding, the nonmovant can no longer rest on
mere allegations, but must set forth evidence of specific facts.
Lewis v. Casey, _____ U.S. ____, 116 S. Ct. 2175 (1996).


### B.    Equal Pay Act

Defendant contends that plaintiff has no Equal Pay Act claim
because she has failed to provide prima facie evidence that her
job was "substantially equal" to that of the Director of Parks
and Recreation, Alton Woodard.  Plaintiff argues that she
performs all the duties of the director's position and thus her
actual job duties must be equal to those of Woodard.  According
to plaintiff, the City violated the Equal Pay Act by paying
Woodard more than plaintiff.[4]

In order to make out a prima facie case under the Equal Pay
Act, the plaintiff must show: (1) that she receives lower pay
than a male co-employee; and (2) that she performs work that is
substantially equal in skill, effort and responsibility under

---

[4]    In her brief plaintiff asserts that from 1991 until the
reorganization she was the only female department head within the
City's six departments and now there are no female department
heads.  Plaintiff has provided no proof of such statistics.  Even
assuming these facts can be proven, the court finds this evidence
to be of very little relevance to the central issue in this case.

similar working conditions.[5]  Mulhall v. Advanced Security, Inc.,
19 F.3d 586 (11th Cir.), cert. denied, 513 U.S. 919 (1994);
Waters v. Turner, Wood & Smith Insurance Agency, Inc., 874 F.2d
797 (11th Cir. 1989).  The Eleventh Circuit has recognized that
"[t]he standard for determining whether jobs are equal in terms
of skill, effort, and responsibility is high."  Waters, 874 F.2d
at 799.

There is no dispute that plaintiff was paid less than
Woodard, but there remains a dispute as to exact disparity in
salary.  Likewise, there is no dispute that plaintiff performed
duties for which she and Woodard share responsibility in
differing degrees, even though they may not share all the work.
These areas include planning and promoting recreational programs
and facilities, making public appearances and speeches, and
dealing with employment matters for other employees within the
department.

"The restrictions in the [Equal Pay] Act were meant to apply
only to jobs that are substantially identical or equal."  Brennan
v. City Stores, Inc., 479 F.2d 235, 238 (5th Cir. 1973).  "Job
titles are a factor for consideration, but are not dispositive."
Mulhall v. Advanced Security, Inc., 19 F.3d 586, 592 (11th Cir.),
cert. denied, 513 U.S. 919 (1994).  The actual duties that the
plaintiff and Woodard are called on to perform is the controlling

_____

[5]    The Equal Pay Act provides that "equal work on jobs the
performance of which require equal skill, effort, and
responsibility, and which are performed under similar working
conditions."  29 U.S.C. § 206(d)(1).

9

factor under the Equal Pay Act.  Waters, 874 F.2d at 799.

The central disputed matter in this case is whether
plaintiff's purported performance of job duties under Woodard's
area of responsibility renders her job equal to the position of
director of parks and recreation.  Plaintiff argues that Woodard
is simply a "figurehead" or an added layer of management in the
hierarchy within the City.

The facts establish that upon the reorganization of the
parks and recreation area in 1993, plaintiff no longer had the
absolute authority or accountability for decisions in that area.
Rather, Woodard became the person accountable to Mayor Langford
and others for the programs and facilities and any decisions
related to that area.  See Langford depo. at 10-11.  Plaintiff
acknowledges that Woodard is no mere co-employee, but rather
serves as her supervisor.  Id.

When analyzing under the Equal Pay Act whether two jobs have
equal responsibility in performance, the regulations describe
responsibility as "concerned with the degree of accountability
required in the performance of the job."  29 C.F.R. § 1620.17(a);
Krenik v. County of Le Sueur, 47 F.3d 953, 960 (8th Cir. 1995).
Both case law and the regulations recognize that additional
supervisory responsibilities generally provide a basis for a pay
differential.  29 C.F.R. § 1620.17; Krenik v. County of Le Sueur,
47 F.3d 953, 960-61 (8th Cir. 1995); Riordan v. Kempiners, 831
F.2d 690, 699 (7th Cir. 1987)(Generally "the work of a supervisor

and of the workers [he] supervises is necessarily different.").[6]

Even assuming that plaintiff continued to micro manage the day-to-day operations of this area, Woodard has been recognized as the director and the one accountable for the parks and recreation area to the City, since his hiring.  Any areas where plaintiff had input and provided the background work or all the work, such as in preparing the budget, developing recreational programs, preparing special reports, expressing opinions concerning hiring employees and other areas, remain the ultimate responsibility of Woodard, regardless of whether or not he delegates part or a majority of the tasks to plaintiff or others.

The current position of director may involve many of the same responsibilities handled by plaintiff prior to the reorganization and she may continue to handle many of these responsibilities.  However, it is clear that at a minimum, Woodard has additional responsibilities concerning the swimming pool facility and the final supervisory authority over plaintiff, as well as other employees.  Therefore, the court concludes that by shouldering the ultimate responsibility for the recreational

_____

[6]   Courts have recognized that for supervisory duties to preclude equality between jobs, the duties must not be "insubstantial or minor" but rather "an appreciable variation in skill, effort of responsibility between otherwise comparable job work activities."  See Laffey v. Northwest Airlines, Inc., 740 F.2d 1071, 1083 (D.C. Cir. 1984), cert. denied, 469 U.S. 1181 (1985)(citing a list of similar rulings by other courts in Thompson v. Sawyer, 678 F.2d 257, 272, n.12 (D.C. Cir. 1982)).  In this case, based on the large area of responsibility over which Woodard maintains ultimate decision making responsibility and accountability, the court concludes that this supervisory responsibility is appreciable and not insubstantial.

11

facilities and programs, as well as all department personnel, including plaintiff, Woodard maintains additional responsibility which prevents his position as director of parks and recreation from being equal to plaintiff's job as superintendent of parks and recreation.

There remain no material factual issues in dispute concerning plaintiff's prima facie case.  Based on the foregoing, the City of Fairfield's motion for summary judgment is due to be granted.  A separate order will be entered.

DONE this __6th__ day of November, 1997.

_____
SENIOR UNITED STATES DISTRICT JUDGE